Ronda Crutchfield v. Sewerage & Water Board They have you outnumbered. It's the weight, not the count. Good morning, judges. On behalf of the residents of the Dwyer Road neighborhood, first of all let me thank you for allowing this opportunity to present the case. A little bit awkward because it's been over 20 years since I've been on this side of the bench. But I can't think of a case that I'd rather be involved in than this one. Because it absolutely, in plaintiff's view, demonstrates what the class action device was developed for. And one of the main factors is to level the playing field between these individual residents of this neighborhood and the corporate and governmental defendants. What's the most similar case you can point us to that's been certified as a class action? Not a single event, like an explosion at a plant or the Deepwater Horizon event, but a multiple event, multiple defendant tort that's been certified as a class action. What's most similar to this? First of all, the most similar case that I can think of is the Mullen case, Mullen versus Treasure Chest Casino. But we don't maintain that this is a multiple event. We view it, we the plaintiffs view it as a single event. You had one contract, one plan, one design, one construction. What's the time period of what you're describing as a single event? The completion of the canal took five years. The activities that we basically talk about, the vibration and the dewatering, those activities were the first activities done. So it wouldn't have taken five years for them to do that. Why isn't vibration dewatering, sounds like at least two events, two different causes of the harm? There's unquestionably two different activities, yes. We don't feel that that is a detriment to moving forward on a class action device. It's a, you're going into the area of comparative fault, which courts deal with every day in terms of comparative fault. And it's very, very, particularly in this case, it's extremely easy to determine the difference between the vibration damage and the dewatering damage because all of the experts agree that those particular activities cause what they refer to as signature damages. So that you're able to determine what caused what. And in fact, one of the defendants expert, Mr. Quick, teaches a course on signature damages. So we don't envision that as a problem or a concern. I would like to go ahead and deal with the specifics of this case in terms of the facts and law. And I tried to, without exaggerating, there are over 30,000 pieces of paper in this case. And I really think it's a lot more simple than that. So I tried to grab five undisputed facts to indicate why it would be appropriate to deal with a class action device. One, there's no question that the canal was built by the defendants. Two, there's no question about the activities of vibration and dewatering. Three, there's no question about the fact that vibration causes the kind of damages like cracked walls, jammed windows, jammed doors, etc. And there's no dispute about the fact that dewatering can cause subsiding of the foundations. Four, the class representatives swore under oath that this was the type of damage that was sustained. And five, the class representatives swore under oath that the damage didn't exist prior to the canal being built. Now, if we just take those five facts and superimpose those on the footprint in question, the boundaries of the class, that alone, one would think, would be sufficient to deal with a class. In fact, it's so evident that a class device is appropriate because the defendants, pre-litigation, was actually treating this neighborhood in that manner. Their experts told them that the radius of influence, one said 300 feet, another one said 600 feet. The Corps of Engineers said you better deal with about 638 feet in terms of the radius of influence. They had meetings, at least four meetings, with the group, with the neighborhood residents. They did flyers in the neighborhood residents. It had a PowerPoint indicating that if anybody had any, they set up a hotline. They didn't do individual phone calls to people saying come in and let's talk about your damages. They dealt with them as a cohesive group. And another name for a cohesive group is a class. When we turn the page to deal with the law in this particular matter, the defendants and the plaintiffs agree on one aspect, at least, which we, I believe, all think is the linchpin of this case. And I think it was the Surgeon Water Board that indicated that the central issue, the central issue in this matter is the issue of causation. That all, because Judge Feldman had indicated that there's varying degrees of damage, type of damage, degree of damage, that that inferred that you had to have a finding of individual causation. That reasoning, and we believe this is the incorrect legal standard, that reasoning would mean that at a certification hearing, we would actually have to have a mini-trial. Because we've already demonstrated, and this is why the defendants had to attempt to circumvent what I'm about to say, we had already demonstrated that the overarching common question in this particular matter was, one, the question of inverse condemnation, which would apply to all of the residents of this Dwyer Road neighborhood, and two, the very concept that we deal with every day of simple negligence in terms of whether or not the defendants had violated the standard of care that was established by the Corps of Engineers, which would also apply to all of the class members. Now, if those are the common questions that predominate in this particular case, and we already had an agreement, shouldn't say an agreement, we already had a finding by the judge that for the purpose of certification, since all of the experts agreed that they would use primarily the same formula, if you will, in determining damages, if you have the liability based on the common question, you have the damages in terms of the formula, if you have to prove class-wide causation, you had to try. You're not contending, are you, that, for example, the amount or degree or duration of vibration was the same for every single homeowner? No. What we're contending is that in terms of the negligence violation is that on hundreds of occasions, the construction companies exceeded that level which the Corps of Engineers said they should not. But for a particular homeowner, how at trial would you prove which defendant caused the damage to that homeowner and when? We would look at the daily records because there are about 5,000 daily records reports in the file, and those records indicate who was doing what when. But for each homeowner, it's going to be a different combination or single defendant that's responsible. No, what I'm saying is if you're talking about . . . There aren't different defendants responsible for the dewatering and different defendants responsible for the vibration? Yes, and they cause different damages. And that's why Judge Feldman said those questions of figuring out who caused the damage to what property, these thousands of property, that's going to be the predominant issue. No, let me give you an example. Why is he wrong about that? That's what he said. Whether he's right or wrong, why is he wrong? I understand, Judge. When we talk about signature damages, if there is damage from vibration, let's say, that damage caused a specific type. In fact, according to defendant's experts, you can't look at certain cracks and say that was a vibration crack. There's a way to determine vibration cracks as separate from a non-vibration crack. And in terms of subsiding, and this was all new to me, but the experts agree on this. It's a question of how a home tilts in terms of whether or not the damage was caused by a subsiding, by dewatering. Let's say you consider vibration damage to a home. Yes. How are you going to figure out which of these contractors and subcontractors on which day caused the vibration that damaged the home? Because there were certain times when there was sheet piling done, and there were certain days when there was timber piling done. Those days are recorded in the daily records. Hill Brothers did the timber piling, and Griffin did the sheet piling. So we know what was going on by the daily records at any given time. So why isn't it going to be an individual issue making that determination for each homeowner? I'm sorry, Judge? Why isn't that going to be an individual issue to make that determination for each homeowner? Homeowner A is going to have one analysis and trace it back to one defendant. Homeowner B is going to have a different analysis based on those records. But even with that, we're not saying it wouldn't. We're saying that the motion for a class certification is not the time to determine that. In fact, Deepwater Horizon said specific causation, while it may infer individual treatment, is not detrimental to a class action. You go in and deal with your class, and then in terms of causation and damages are so closely related, that's a second phase, if you will, of what should take place. Let me ask you a different question. This case started out in state court. Correct. It was removed on a government contract of defense under the federal officer removal statute. The plaintiffs filed a motion to remand. Judge Feldman denied that. The plaintiffs sought to appeal that, and our court said, well, no, you can't seek interlocutory appeal of that. And then you went through class certification. He denies class certification. But now it is before us, and we can always look at jurisdiction. What's your position on whether there's federal jurisdiction, since you wanted to appeal it earlier in the case? Well, clearly we wanted to be in state court. We didn't sue any of the contractors. We sued Sewage and Water Board. Sewage and Water Board brought the contractors in. We believed and still believe that the contract immunity doesn't apply, and the reason why is once you violated the federal law, once you violated the terms of the agreement, then you cannot then attempt to shield yourself with contractual immunity, governmental immunity, I'm sorry. And I think the record is replete with incidences of violation. When I say hundreds, I'm not exaggerating. If you weren't proceeding under Rule 42, consolidation, why wouldn't it serve you as well, if not better, than a class action? Well, if we believe that the class actions device is, if we believe that all the requisites or requirements of a class action device are present, so we can deal with it in one single trial, as opposed to having multiple trials with hundreds of witnesses, the same experts testifying, which are very expensive. So when you talk about economy of scales, and you're talking about decreasing expenses to these residents, who could not afford for one expert, let alone all of these experts? It just makes more sense to have one trial than to have a multitude of trials. And that's true even if you have to have some subclasses as it relates to the causation aspect. Well, that's my point. You can do that with a consolidation. You've already said that you'd have to have all these mini-trials to determine damages for a class action, and you can, under Rule 42, consolidation, you could, I suppose, have several trials of the different types of damages over the different periods of something. But I just wanted to get your answer. Thank you. And you've saved time for rebuttal through Mr. Etter. Thank you, Mr. McNairis. Mr. Richardson. Good morning, Your Honors. My name is Jeff Richardson, and I will be presenting the argument today on behalf of the defendants. My specific client is Griffin Dewatering Southwest, and although I think I can answer questions as to all the defendants, as Your Honors have already noted, different defendants did different things and there's different allegations. So if you do have a question specific to a particular defendant, a co-counselor is certainly here to answer those questions. In the Comcast case, the U.S. Supreme Court said that Rule 23 doesn't establish a pleading standard, but instead requires evidence of each of the elements of Rule 23, commonality, predominance, et cetera. In this case, the plaintiffs did not present evidence to meet those elements, and so for that reason alone, it was easy for the district court to conclude that class certification was not appropriate. Moreover, the defendants, who did not have the burden of proof, we actually presented affirmative evidence that the elements were not met, and we didn't use it with our own experts. We presented the testimony from the very experts that the plaintiffs themselves hired in which those experts talked about the differences from house to house. This was a straightforward case for the district court, but on appeal, with the standard review of abusive discretion, we believe that it should be an easy case for this court to affirm. I'm going to start by talking about commonality, and then I'll move on to predominance and superiority. Many of the cases that the plaintiffs cite, like the Mullen case that plaintiffs' counsel just mentioned, were cases decided under the old test for commonality. Those cases say things like, the requirement is not demanding, and it's enough to have one issue whose resolution affects a significant number of putative class members. That's no longer good law. Walmart changed the law, the Supreme Court case, Walmart, in 2011, and as this court recognized in cases such as MD versus Perry, Walmart heightened the standard for commonality. So under the current law, what did the plaintiffs have to show, which they failed to do? They had to show, for example, Walmart says there must be a common issue that the commonality would have to resolve an issue that is central to the validity of each one of the claims in one stroke. So what's the central issue, and can you resolve it in one stroke? Well, plaintiffs' counsel just said we actually have agreement on the central issue, which was the first time I heard that, but that's great to hear, causation. We know causation is a central issue. Some homeowners may have a crack in the wall, and the question is, which defendant's tortious action allegedly caused that crack? That's what this case is going to be all about. Can you prove it in one stroke? Can you try the claims of just the class representative and say, if they've proved causation as to one defendant, such as my client, then everybody has? Can you say if you've seen one, you've seen them all? And certainly that's not the case here. The evidence that the plaintiffs had the burden to present just didn't show that. Why aren't there some central issues that would affect all class members, such as the liability of the sewage and water board, the government contractor defense that is the basis for your removal? Why aren't those issues that would under Walmart, may not be the number one issue in the case, but are important issues that would affect every class member? Well, I would agree that, in fact, the cases say that. I mean, Walmart says that, that in any case, in any class action, that anything that's brought as a class action, any competent plaintiff attorney, I think they say, can point to one or more common issues. I mean, otherwise you wouldn't even, with a straight face, be able to file a class action. But the question is whether those are the central issues for the case. And, you know, government immunity defense – You mean Walmart is saying it has to be the number one contested issue to meet commonality? It's got to be one of the top issues. And that's the reason that I think that the dissent – One of the top. So what number? Where does it have to rank? I mean, I think if you know, in a case like ours, that there's one issue that's going to be the central – This is what every case is going to turn on as causation. I think what Walmart really changed, before Walmart, if it affected a lot, but not everyone, that was good enough under commonality. Walmart says it has to affect every class member. That was the problem in Walmart, because these people are all at different stores. But you're basically saying Walmart says not only does the issue have to implicate the claim of every class member, but it has to be, I don't know, one of the top two issues in the case? Another way to say that, Your Honor, would be both quantity and quality. It's not just everyone. And I agree, that's certainly part of Walmart. But also, it's got to be – You have to look at the cases and see what are these cases are going to turn upon. I mean, just now the plaintiff's counsel said, you know, it's an issue for all of these cases is, you know, was there a construction – I mean, of course there was a construction project. But that's not – these cases are not going to turn on whether or not there was a construction project. These cases are going to turn upon causation. People will win or lose their cases based upon whether they can show causation. And because – That's true in every case. I mean, it's true with every element in every case that if you can't prove an element, you're going to lose. And isn't liability a key issue in just about every case? Sure, but liability turns upon causation, right? Because if you can't prove – You know, here we have some class members that, you know, have different facts that relate to their house. I mean, for example, take – we know, for example, there were three class representatives that actually showed up for their deposition, three different houses. You had the Crutchfields. You had the Wombles. And you had the – you had the – excuse me – Ms. Whitaker. And for Ms. Whitaker, for example, she had the self-serving statement that my damages were caused by the defendant's actions, right? But when her own place expert, Fritz Gertler, inspected her house, he says this subsidence that she's complaining about, there's no way it was caused by this actual construction project because it took place over years. So she's not going to be able to prove causation for her house. Now, does that mean that every plaintiff is the same, that every plaintiff loses? Well, no. But you're going to have to look at each case differently, and that's going to be the central issue. Of course there's going to be a few issues that are common, but what the cases are going to turn upon is going to be the causation issue, which is just so central to this case. What are the common issues? I think the common issue – I guess the defense could be a common issue. That's an issue of law, the governmental contractor defense. That certainly could be a common issue, but that will be just decided, and then we'd move on with the case. If the case ends for everybody, that's fine. But just because there's a case-determinative motion in limine, that doesn't mean that a case is appropriate for certification as a class. If that was all that was required, you'd have tons of cases certified as a class. But if you get past that and these cases actually go to trial, then you're going to have to be looking at the causation issue, which is going to vary. You said there are common issues. What are the common issues? You've listed one. What are the other common issues? Well, all of these people lived in New Orleans East. I guess they have that in common. All of these people – New Orleans East was flooded by Hurricane Katrina. This whole area got from 6 to 10 feet. And so one thing that's common in the case, if you want to use that word, is that just about all of these houses were renovated after Hurricane Katrina. Now, we think that actually is not a common issue which supports class cert. It actually is a reason that class cert isn't appropriate because one of the things that we know from the litigation both in Louisiana state court and federal court is many of these contractors came to New Orleans from elsewhere. Some did great work. Some did not do good work, and that varied from house to house. And so here there's going to be an issue of alternative causation for which none of these defendants are responsible of is the reason that someone has that crack on the wall the fact that the contractor didn't do a great job in renovating the house. And this is not just a theoretical possibility. Those three class representatives I was talking to you about, we know that Ms. Wamble said that a lot of the work that she did, she did it herself. It was her and her brothers and her son. Now, maybe they did a great job, but maybe her cracks were because they didn't do the work that a quality contractor would do. And she also said they had an addition that was done by a person whose last name she could not remember. He came to town, did the work, paid him in cash. I mean, did that person do a good job? Perhaps, but maybe not. And that's going to be an individual issue for her house. But even better example is the Crutchfields. The Crutchfields said that the person that did the work at their house, someone who came in from out of state, a guy named Roberto, and he did the renovation. He put a second story on the house. He admitted that there's no evidence. The plaintiffs admitted there's no evidence there was an engineer that said the house could take a second story without having damages. There's no evidence of whether there was a permit. There's no evidence of whether it was licensed work. So a true issue in the Crutchfields case is going to be did your damages come from the contractor? Now, I'm not going to say that if we win against the Crutchfields that the contractor was the cause of damage. I'm not going to say that means everyone in the potential class loses, that they all had bad contractors. But that's exactly what the plaintiffs are trying to say. They're trying to say if we can prove the case of just one trial, in one trial of the class reps, then we've proved it for everybody. And the opposite is true. These cases are going to degenerate into plaintiff-specific issues. And as our courts say, and they say it mostly in the predominance aspect, which I was going to get to in a second, that when cases degenerate into individual plaintiff-specific issues, that's when class certification is not appropriate. And that's what we're going to have here. How would you proceed if you prevailed and there was a consolidation under Rule 42? How do you see that playing out? Now, that would work perfectly well, Your Honor. And, in fact, I'm not just theorizing it worked well. It actually has worked well. In the briefs, you're citing cases like the Holzenthal v. Sewage and Water Board case, which is the Louisiana Fourth Circuit case from 2007. That's where they had another construction project. It was in, like, the Broadmoor area of New Orleans near Napoleon Avenue. And in that case, I think there were three homeowners that, you know, they live next to each other, and they tried their case together to consolidate, you know, experts and stuff like that. And they were able to show, you know, enough commonality between them to be a proper, under Louisiana state rules, and I think it would be the same in federal court, a proper consolidation. That's a fine way to try this. And, additionally, many of these cases are, I'm sure, going to be settled. I mean, that's already started here. That's how when the Sewage and Water Board has had other projects that, you know, some contractors like my client have been involved in those. Sometimes it's been someone else. But we have a track record for resolving these things successfully, and that's cited in the brief. Treating it as a class action and trying to satisfy Rule 23 has never been done against any of these cases against the Sewage and Water Board and others. And that's why what they're asking for is beyond the norm. That's not how these things are done. If it proceeded under Rule 42 or consolidation was used, what issues do you see could be tried together, consolidated to save expense and provide for a more level playing field? Certainly discovering, for example, the experts and stuff. There can be some issues that will be similar enough to have common discovery in those issues, some legal issues that could be the same. But at the end of the day, when individual plaintiffs had to prove, you know, now here's my cracks on my wall. Who's responsible, if anyone, for this? Is it a defendant or is it a contractor or is it someone else? You know, there's an example in the record of where Fritz Gertler's, the plaintiff's expert, his model that looks at vibrations and stuff, there was one example where the vibrations that day were actually not caused by any of the pile driving by either of the defendants that did their different pile driving, but it was an RTA bus that hit a pothole, and that's what caused the spike. And he was asked in his, you know, deposition, can you account, does your model account for that being a cause versus an action of a specific defendant? And he said, no, no. Because that's what their model does. It just sort of glosses over all the differences and say, there were, and we just heard this from plaintiff's counsel, there were vibrations. There was dewatering. And so therefore, defendants are all responsible. But that's not what, this project took five years. It was a 7,000 foot long canal. It was worked on in different 500 foot sections. And so even if there were vibrations on one particular day that may have caused the houses in that vicinity to have problems, that doesn't mean someone over here had problems. In fact, it doesn't even mean that two houses next to each other over here had problems. Because this was one of the most fascinating parts of the record to me. The plaintiff's account, the plaintiff's experts said in the record on page 6033 that you could have two houses on the same block, and they could be exposed to the same vibration, and one might be caused damage and one would not. Why? Because of the harmonic frequency of the house. One house might have damage, and the one right next door to it would not. And he said this actually happens in real life, and he used this example of a bridge in the state of Washington where it was a very windy day. And, of course, there's wind all the time, right? But on this one day, the wind caused such vibrations that matched the harmonic frequency of the bridge that the bridge failed. Now, that's a very freakish thing. Sure, sometimes winds will cause bridges to fail, but not all the time. And the same is true here. One class member or plaintiff might be able to show there were vibrations that caused damages at my house, but that doesn't mean it has been proved, to use the Walmart term, in one stroke for all class members. And, again, that's just vibrations. As you mentioned, Judge Costa, they have different theories. They have the dewatering theory, they have the vibration theory. As to one of the defendants, Bate, they said that there was improper collection of records. I'm not exactly sure how that causes damages, but it's another theory. And, you know, even for dewatering, which is my client, my client Griffin made the equipment that was used for dewatering. And one of their theories is that maybe the equipment did not work well one day. There was a malfunction. Let's just assume that that happened on one day. But then on another day, they have a theory that a different defendant used the equipment incorrectly. And so you could even have two houses that say, we both have dewatering damages. But for one of them, they might be able to show a claim that my client was responsible, and another one would have a claim against someone else. And that's just the dewatering. Then you also have the vibration, and you also have the other theories. You have so many different theories of so many different actions. And it's even more complicated than that, because you can't just say there was defective dewatering equipment, and so the houses were damaged. Because the plaintiff's own experts said that one part of town, the dewatering might actually not cause an effect, because the soil is such that it can take lowering of the water table without causing houses to move. Another part of town, and we're talking about parts of towns that are close to each other, their soil would be different, and maybe it could have more effect. And even that's not the end, because depending upon how the house sits on the ground, you could have a house that is on a slab that the plaintiff's experts, Dr. Calley, said would be more susceptible to damage. So maybe it was caused damage. But right next door to it, you have a house that was on pilings, and it would be safer from dewatering. And right next door to it, you have a house that's on piers, and it is safer still. So you can't try the claims of one of those houses and then say if they prove causation, then everyone has proved causation. Now, I've been talking about commonality. I just want to go off and talk about predominance, because there's no question that the testament of predominance is you have to look at the central issues. For example, as this court said in O'Sullivan's case, which was in 2003, for common issues to predominate, there must be commonality on the substantive issues that will control the outcome of the litigation. What's the difference between your commonality... They're very close. That's why I... Yeah, and that was the dissent... And you're not the only one, Judge Costa. That was the dissent in Walmart. The dissenting opinion says you've made commonality and predominance too close. And the majority opinion addressed it, and they say the dissent claims that we've made them the same, but we haven't, because for commonality, as I understand the distinction, for commonality, you are looking at what are the most important issues in the case, and you've asked, is it number one, number two, number three? That's to be determined. Even if you get past that, then you go to predominance. And the Comcast, another Supreme Court case, says that the predominance test is even more demanding, because even if it's one of those top three issues, then you have to look and see what is going to control the outcome of the litigation. They're absolutely related. I won't deny there's some overlap, but the Supreme Court's recent cases tell us that... I mean, they're serious about this. Whether you view it as a problem of commonality or whether you view it as a problem of predominance, this case doesn't meet it. And the district court went through the full analysis of commonality and went through the full analysis of predominance and, frankly, used the same fact pattern to say commonality isn't met, and then, likewise, predominance is not met either. The plaintiffs... Do you have any comment on... Judge Costa had asked earlier about the jurisdictional question. Without getting into the merits of that, although you're free to do that, do you agree that that's ripe for decision by us at this point? In other words, that we have appellate jurisdiction to decide the issue of the jurisdiction in the district court? Any court always has the duty to look at jurisdiction, so I can't deny that even though they did not brief the issue, Your Honours could certainly look at jurisdiction. I will tell you that it was fully briefed at the district court level. That's all in the record on appeal. And just to be brief, the argument of the government contractor defense is a ground for removal, and it's a very special ground. Unlike many federal question grounds for removal where they are interpreted against removal, this is one of those rare grounds that's interpreted in favour of removal. And so you can have cases, and there are cases in the books, where the defendant actually lost the government contractor defense, but because it was a colourable defense, that was enough to support the case being in federal court. And so here, we believe it's a pretty strong defense, and to be completely honest, it's going to be coming in the future in this case. But regardless of whether the defendants win or lose that defense, it is certainly a colourable defense, and that was the finding of the district court, and again, that is in the record, and although this court did not consider it before because of the procedural way that it was appealed to this court, I believe it's pretty clear that there is federal jurisdiction here under that statute. Unless the court has any other questions, I think that states our position. Thank you, Mr. Edders. Thank you. Mr. Edders, you've reserved time for rebuttal. First, the question was posed as to the standard of review. We contend, our position, is that this case requires de novo review because Judge Feldman misapplied the law of this court and also the recent decisions of the U.S. Supreme Court. He misapplied the law by looking at the class members without considering the defendants, without considering that the 30,000 pages of documents produced so far by the defendants and from the Corps of Engineers, all of that will come in once. All of that should only come in once because that establishes the whole course of conduct. For the government contractor immunity defense, who raised it? That will be answered essentially by one witness. We bring in John Fogarty, the resident engineer for the Corps of Engineers. His name appears in the record. He was the one overseeing this, and he will be able to answer the question of, did the contractors comply with the Corps' specifications or not? Our view is that there are more than 298 instances where they violated the vibration specification, and the record is replete with days when they did not comply with the dewatering specification. And, in fact, Hill Brothers has admitted they didn't comply with the dewatering specification. Hill Brothers has admitted that their actions damaged at least one building, the Downman Grocery Store. That's in the record. So these overarching issues, government contractor immunity and the Sewage and Water Board's constitutional duty to compensate people when private property is damaged or taken, even temporarily, for public purposes. That decision, those decisions were decided in one trial, in the Holtsenthal case, in one trial in Lombard. The other cases, those all show this case can be one trial, class-wide, will determine these liability issues. They just said it. They're going to bring the government contractor defense again. We think we presented more than sufficient evidence to the district court of all these violations of the specifications. Why couldn't that one trial concept you're using work out under Rule 42, and then you have all these perhaps subset trials for damages? Let me suggest to you the case that they refer to, the Holtsenthal, which then became Shimone, when more than 200 cases were removed to federal court and assigned to Judge Lammel. Yes, they settled. It took 10 years to resolve those cases as a mass consolidated action. The trial court would schedule a flight. They'd do discovery for a small flight. On the eve of trial, that flight would settle. And then they'd do another flight, and another flight, and discovery flight. It took 10 years to get that resolved. And we've got the same pattern actually evolving right now. But your co-counsel in his opening argument said we would have these mini-trials on the exact types of damages or the amounts of damages. And that is standard in class actions. That's often done administratively by a special master or by a court-appointed dispersing agent. That can be done as an administrative procedure, and it's frequently done and is efficient then because we've taken all the big bulk of the records, all the testimony of the defendants, all the testimony of the experts, and we can make one ruling as to everyone. If we do it as consolidation, we're doing flights of trials and only with particular stipulations would the defendants have to say, oh, we're going to be bound on this. We're going to be bound by the prior trials. Usually the flights, you don't get a stipulation that says you're liable for inverse condemnation. To answer Judge Costa's question, I would direct this court to look at Jenkins v. Raymark, which was certified for the determination of the state-of-the-art defense. And with careful structuring, this court approved that approach. Take care of that overriding issue which would result in everyone either being absolved, the defendants either being absolved, or being in the case. Your time has expired now, Mr. Edder. Your case and all of today's cases are under submission, and the court is in recess until 9 o'clock tomorrow.